Jacquelyn HAWKINS, Plaintiff,

v.

ANHEUSER–BUSCH, INC., Defendant.

No. 79–299C(4).

United States District Court, E. D. Missouri, E. D.

Nov. 25, 1980.

Mary Anne Sedey, St. Louis, Mo., for plaintiff.

Wayman F. Smith and Donald L. McCullin, St. Louis, Mo., for defendant.

## MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court for a decision on the merits following a four-day bench trial commencing on September 15, 1980. Plaintiff brings this action under 42 U.S.C. § 2000e to recover damages allegedly resulting from sex discrimination in employment.

Having considered the pleadings, trial testimony, exhibits, stipulations of the parties, briefs, and applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, Jacquelyn Hawkins, is an adult female citizen of the United States

who has resided in St. Louis, Missouri, at all times relevant to this action.

2. Defendant, Anheuser-Busch, Inc., is a corporation organized pursuant to the laws of the State of Missouri and, at all times relevant herein, has been an employer within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 206(d).

3. On August 3, 1978, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission [EEOC]. Plaintiff alleged that defendant had discriminated against plaintiff on the basis of sex in refusing to promote her to the position of supervisor of trade returns. Plaintiff filed a second charge of discrimination with the EEOC on October 18, 1979, alleging that defendant had discriminated against plaintiff in refusing to promote plaintiff to the position of material control analyst in the trade returns section of defendant's Operations Material Control Department. Plaintiff further alleged that defendant had changed plaintiff's job description to include more clerical functions and less decision-making responsibility in retaliation after plaintiff had filed the prior charge of discrimination with the EEOC.

4. The EEOC issued a notice of right to sue arising from plaintiff's first charge of discrimination on December 22, 1978. Plaintiff timely filed suit on March 21, 1979. On May 23, 1980, the EEOC issued a notice of right to sue arising from the second charge of discrimination. Plaintiff timely amended her complaint on June 9, 1980, to reflect the matters alleged in the second charge of discrimination. Plaintiff's amended complaint substantially reiterates the matters asserted in the allegations of discrimination filed with the EEOC.

5. Plaintiff was initially hired by defendant in 1967 as a statistical clerk. Following a one-year maternity leave ending in April of 1971, plaintiff was reemployed by defendant as a junior secretary in the Operations Material Control Department under the supervision of the assistant department manager who was also responsible for management of returnable items used in the packaging and moving of beer (e. g., returnable bottles, kegs, and pallets).

6. In February of 1975, defendant established a separate trade returns section in the Operations Material Control Department. The trade returns section was generally responsible for forecasting repair, replacement, and allocation of trade return items and balancing inventories of trade return items among defendant's facilities.

7. Plaintiff worked in the trade returns section as an accounting clerk from the inception of the trade returns section until the termination of her employment in February of 1980.

8. In April of 1978, plaintiff applied for the then vacant position of administrator of trade returns, and her application was rejected. Plaintiff again applied for the position when it became available in July of 1979.

9. The job description for the position of administrator of trade returns sets forth the following minimum qualifications:

(a) a college degree in business, industrial engineering, materials management, or a related field; and

(b) two years experience with Anheuser-Busch or three years in materials management; and

(c) a basic knowledge of computers.

Additional qualifications considered desirable include a master's degree in one of the above-mentioned fields; five years with Anheuser-Busch or in materials management; and a working knowledge with computers and prior experience in systems implementation.

10. Plaintiff has a high school diploma. Although she has completed introductory college courses in business, business mathematics, psychology, and data processing, plaintiff does not have a college degree.

11. The college degree requirements for eligibility for the position of administrator of trade returns operate to exclude women from eligibility for the position because women hold these degrees in substantially smaller percentages than their percentage in the population.

12. The administrator of trade returns is directly responsible for long-range forecasting, coordination of transfers, repair and inventory maintenance of trade return items, and budgeting for the trade returns section, through the development and implementation of computer systems where possible.

13. Computer training, and a college degree in one of the designated fields, is substantially related to the efficient functioning and the responsibilities of the position of administrator of trade returns.

14. Plaintiff lacked the necessary educational background and computer training to be qualified for the position of administrator of trade returns.

15. In 1978, the trade returns section in the Operations Material Control Department was reorganized. The administrator of trade returns became the supervisor of trade returns, with some of the functions previously performed by the administrator to be performed by an individual in the newly-created position of material control analyst. Some of the responsibilities previously fulfilled by plaintiff as an accounting clerk were also to be performed by the material control analyst. Plaintiff, as an accounting clerk, became responsible for the clerical duties in the trade returns section.

16. The changes in plaintiff's job responsibilities were the result of the reorganization of the trade returns section of the Operations Material Control Department.

17. The job description for the position of material control analyst set forth the following minimum qualifications:

(a) two years of college with emphasis in inventory and production control; and
(b) three years of experience in inventory and production control.

Additional qualifications considered desirable included a bachelor's degree in business or an associate's degree in materials management, as well as additional production and inventory control experience. Defendant sought to hire an individual with special knowledge and skills in forecasting and inventory control.

18. During the seven years plaintiff worked in the trade returns section, she gained experience in the inventory planning, allocation, and short-term forecasting functions assigned to the newly-created material control analyst position.

19. After plaintiff's application for the position of material control analyst was rejected, defendant continued to seek applicants with similar qualifications, e. g., trained to perform functions previously performed by plaintiff.

*Conclusions of Law*

1. This Court has jurisdiction under 42 U.S.C. § 2000e–5(f)(3).

2. Title VII makes it an unlawful employment practice for an employer

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's ... sex ....

42 U.S.C. § 2000e–2. The purpose of this Act is to ensure that men and women receive equal treatment by their employers. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

3. Plaintiff may establish a prima facie case of sex discrimination by showing that facially neutral standards operate in a "significantly discriminatory pattern." *Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977). A sex-based disproportionate impact may be shown by demonstrating that women as a class are excluded by an employment practice at a substantially higher rate than men. *Green v. Missouri Pacific Railroad Co.,* 523 F.2d 1290, 1293 (8th Cir. 1975).

4. In the alternative, plaintiff may establish a prima facie case of sex discrimination by establishing by a preponderance of the evidence that (1) she is a member of the class discriminated against; (2) she applied for and was qualified for a vacant employment position; (3) despite her quali-

fications, her application was rejected; and (4) the employer continued to seek another person for the position. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

5. Upon a prima facie showing under either approach, the burden shifts to the employer to show that the questioned requirement has a "manifest relationship to the employment in question." *Dothard v. Rawlinson, supra; Griggs v. Duke Power Co., supra.*

6. Defendant's requirement of a college degree in either industrial engineering, materials management, business, or a related field as a prerequisite for eligibility for the position of supervisor of trade returns operates to exclude women as a class at a substantially higher rate than men. *See Green v. Missouri Pacific Railroad Co., supra.* This requirement was, however, sufficiently related to the functions and responsibilities to be fulfilled by the supervisor of trade returns to meet defendant's burden of showing that the requirement was a "business necessity." *Griggs v. Duke Power Co., supra,* 401 U.S. at 431, 91 S.Ct. at 853.

7. Because plaintiff lacks a college degree in a job-related field, and such a degree is a legitimate job qualification, plaintiff was not qualified for the position of supervisor of trade returns. Therefore, plaintiff has not established a prima facie case with regard to defendant's rejection of her application for promotion to the position of supervisor of trade returns. *See McDonnell Douglas Corp. v. Green, supra.*

8. Plaintiff has established a prima facie case concerning her application for the position of material control analyst. As a member of a group protected by Title VII, plaintiff applied and was qualified for the position of material control analyst based upon her seven years experience in trade returns. After plaintiff was rejected for the position of material control analyst, defendant continued to seek applications from persons with similar qualifications, e. g., trained to perform functions which had, in substantial part, previously been performed by plaintiff. *Id.*

9. Defendant failed to show a sufficient nondiscriminatory reason for rejecting plaintiff's application. *Id.*

10. The Court concludes that the changes in plaintiff's job description were the product of departmental reorganization rather than retaliation resulting from plaintiff having filed a charge of discrimination with the EEOC.

By reason of the foregoing, the Court concludes that plaintiff was not the subject of sex discrimination when defendant rejected her applications for the position of supervisor of trade returns in 1978 and 1979, because plaintiff lacked the requisite qualifications for the position. The Court further concludes that defendant did discriminate against plaintiff in rejecting plaintiff's application for promotion to the position of material control analyst. Finally, the Court concludes that the changes in plaintiff's job description resulted from reorganization of the trade returns section rather than retaliation.

Therefore, judgment will be entered for plaintiff and against defendant, consistent with the foregoing findings.