Ambrose R. **ROBINSON**, et al., Plaintiffs,

v.

Elmer T. **KLASSEN**, Defendant.

Nos. LR–C–76–348, LR–C–76–347, LR–C–74–107 and LR–C–73–301.

United States District Court, E.D. Arkansas, W.D.

Oct. 19, 1982.

John W. Walker, P.A. Hollingsworth, Kaplan, Hollingsworth & Brewer, Richard Quiggle, Little Rock, Ark., for plaintiffs.

---

David Karro, U.S. Postal Service, Washington, D.C., Kenneth Stoll and Chalk Mitchell, Asst. U.S. Attys., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Currently before the Court is the request of plaintiffs' attorneys for fees and costs expended in this rather long and protracted class action.

This action was instituted on November 23, 1973, pursuant to § 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, alleging, *inter alia*, racial discrimination in transfers, promotions and demotions at the Little Rock, Arkansas post office.

On March 16, 1982, after the expenditure of more than three hundred hours in discovery, pre-trial hearings and trial of the issues, involving approximately three weeks, the parties agreed to settle this action.

The settlement agreement requires the defendant to pay to the plaintiff class the sum of $510,000.00 which has been appropriately designated by the parties as "The Fund." Defendant also agreed to pay plaintiffs' costs not to exceed the sum of $25,000.00. The agreement provides that in the event plaintiffs' costs are less than $25,000.00, the unexpended portion of this sum shall become a part of "The Fund." The parties agreed that the $510,000.00 figure would earn interest, from the date of the tentative approval of the settlement agreement by the Court to the date of the final approval of the agreement, at a rate which the defendant receives on its investments during such period.[1]

The agreement also provides that plaintiffs' attorneys shall be entitled to "reasonable" fees, as determined by the Court, and that such fees shall be paid out of "The Fund."

The Court is persuaded and accordingly finds, that the common fund approach, employed by the parties in the settlement arrangement, is an acceptable way of dealing with fees and costs in civil rights actions. *See Parker v. Anderson,* 667 F.2d 1204 (5th Cir.1982).

On June 4, 1982, counsel for plaintiffs entered into the following joint stipulation regarding counsel fees:[2]

"3. The respective submissions of the parties for fees and costs request a sum of approximately half of the common fund. All counsel agree that a sum of that proportion under the circumstances of this particular case is not appropriate. They, therefore, submit that a total fee and cost amount of $202,500.00 would be fair and reasonable and would strike an appropriate balance between the interest of the parties, and the class and their counsel. They further agree that the distribution shall be as follows:

(a) John W. Walker and Richard Quiggle for themselves and aligned counsel $115,000.00; and,

(b) P.A. Hollingsworth, and aligning counsel, $87,500.00;

4. The parties further agree that such other fees as are appropriate, and have not been previously applied for may be requested pursuant to paragraph 5 of the settlement agreement.[3]

---

1. The Court tentatively approved the settlement agreement on March 17, 1982, and final approval was given on June 28, 1982.

2. Plaintiffs' counsel had previously submitted affidavits in support of their claims for fees detailing the number of hours spent and the hourly rate claimed for services rendered. The total fee claimed by counsel pursuant to these affidavits represented approximately 50% of the settlement figure, "The Fund."

3. Paragraph 5 of the settlement agreement provides:

"The postal service agrees to pay plaintiffs' counsel reasonable attorneys' fees, not to exceed $15,000.00 for any time expended to implement this agreement after the date of its tentative approval by the Court. The postal service shall not be required to pay any attorneys' fees incurred by plaintiffs' counsel as a result of any appeal of the Court's award of attorneys' fees. In the event the parties disagree over the amount of the attorneys' fees to be awarded pursuant to this paragraph, such dispute shall be referred to the Court for resolution."

In an effort to achieve an equitable balance between the interest of the class and counsel for the class, the Court has determined that the various submissions made by counsel in support of their hours and rates claimed for services rendered should be used in fixing counsel fees instead of adopting counsel's stipulation as to the fee to be allotted the attorneys.

The Court is persuaded that in a class action, the Court has an affirmative duty to scrutinize counsel's requests for fees in order to determine not only whether the requested fees are reasonable, fair and equitable to counsel, but to determine also whether the requests are just to the class members, some of whom are unknown and, consequently, are not represented by counsel. To award a fee totaling approximately a quarter of a million dollars solely on a stipulation between counsel without engaging in a searching examination of the time and services rendered would be essentially an abdication on the part of the Court of its duty and responsibility to counsel and the class members. The Court is not unmindful of the fact that reasonable and equitable fee awards to plaintiffs' counsel in civil rights litigation promote and effectuate the federal policy of fully redressing civil rights violations by enabling civil rights plaintiffs to secure competent counsel in the vindication of federal rights. Accordingly, the Court in an effort to promote and foster this concept has taken the approach hereafter discussed in setting fees in lieu of accepting counsel's stipulation. Counsel are to be commended, however, for taking the initiative in seeking to resolve a most difficult and complex matter of fixing fees for ten or more attorneys in a proceeding which has been pending for approximately ten years.

While the Court is not bound by counsel's stipulation, the Court is persuaded that the maximum figure of $202,500.00 agreed to by counsel as the maximum figure for fees which is approximately 38% of "The Fund", should be designated as the upper limit for the recovery of fees and costs for plaintiffs' counsel. Also, the proposed distribution between the two lead counsel, as reflected in the stipulation, is beneficial to the Court in determining fees between the Walker group and the Hollingsworth group. The stipulated distribution for the Walker firm and associates is 57% of the stipulated sum while the stipulated figure for the Hollingsworth firm and associates is approximately 43% of the stipulated figure.

In reviewing the submissions of counsel, the Court has taken into consideration the following criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (C.A. 5th, 1974), which factors were endorsed by the Court of Appeals for the Eighth Circuit in *Doe v. Poelker*, 515 F.2d 541 (C.A. 8th, 1975) and *Cleverly v. Western Electric Co.*, 594 F.2d 638 (C.A. 8th, 1979):

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill required to perform the legal service properly;

(4) the preclusion of other employment by the attorney because of acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and,

(12) awards in other cases.

The following is a schedule of the hours and rates claimed by counsel:

| ATTORNEYS | Total Hours | Hourly Rate | Total Claimed | Multi-plier | Costs |
|---|---|---|---|---|---|
| Walker | 488.4 | $137.50 | $67,155.00 | 25% | $1,168.00 |
| Quiggle | 385.1 | $ 80.00 | $30,808.00 | 1.5 | $3,395.82 |
| Bilheimer | 144.0 | $ 80.00 | $11,520.00 | | |
| Pulliam: | | | $ 8,493.00 | 50% | |
| In Court | 43.5 | $ 65.00 | | | |
| Out of Court | 103.0 | $ 55.00 | | | |
| Hollingsworth: | | | $48,578.00 | 50% | $4,311.17 |
| 1973–74 | | | | | |
| Out of Court | 33.6 | $ 60.00 | | | |
| 1957–77 | | | | | |
| Out of Court | 86.3 | $ 70.00 | | | |
| In Court | 16.4 | $ 90.00 | | | |
| 1978–79 | | | | | |
| Out of Court | 44.2 | $ 80.00 | | | |
| In Court | 4.0 | $100.00 | | | |
| 1980–81 | | | | | |
| Out of Court | 157.3 | $ 90.00 | | | |
| In Court | 44.2 | $110.00 | | | |
| 1982 | | | | | |
| Out of Court | 60.7 | $100.00 | | | |
| In Court | 80.5 | $125.00 | | | |
| Heller: | | | $11,865.00 | 50% | |
| 1978–79 | | | | | |
| Law Clerk | 55 | $ 25.00 | | | |
| 1980–82 | | | | | |
| Out of Court | 163 | $ 50.00 | | | |
| In Court | 39 | $ 60.00 | | | |
| Kaplan | 3 | $ 80.00 | $ 240.00 | | |
| Gordon | 85.3 | $ 50.00 | $ 4,256.00 | | |
| Washington | 12 | $ 80.00 | $ 960.00 | | |
| Jones | 22 | $ 80.00 | $ 1,760.00 | | |

The *Johnson* factors will be considered in the following manner:

## A. TIME DEVOTED TO CASE:

After carefully reviewing counsel's time sheets, the Court is convinced, and accordingly, finds, that the hours claimed by John W. Walker, Esq., should be reduced or adjusted to 458.9 hours; P.A. Hollingsworth's, Esq., out of court hours should be adjusted to 345.4 hours; Janet Pulliam's, Esq., hours for out of court should be adjusted to 99 hours and Ron Heller's, Esq., hours out of court should be adjusted to 152 hours. Relative to the remaining counsel, the Court is of the view that the hours claimed should not be adjusted in any way.

The foregoing adjustments take into consideration 79.4 hours claimed by counsel for time spent preparing for a class certification hearing between December 9, 1975, and November, 1981, which the Court finds was nonproductive and, therefore, these hours are subtracted from counsel's submissions. Because of counsel's unawareness or misinterpretation of a court order entered on December 9, 1975, certifying this litigation as a class proceeding, counsel engaged in discovery and other pretrial activity, related directly to the class certification issue, over a five year period when the Court called to counsel's attention, on the date of the scheduled class certification hearing, that Judge Warren K. Urbom had already certified the action as a class proceeding and

had simply directed counsel to define the class.[4]

## B. VALUE OF SERVICES:

Considering the experience, reputation and ability of counsel;[5] the preclusion of other employment; the amount involved and the results obtained; the undesirability of the case; and awards in similar cases in this district, the requested hourly rate is somewhat excessive, as to certain counsel, and the Court finds that such requests should be reduced or adjusted as reflected by the following schedule, which takes into consideration the adjustments made by the Court with reference to the hours claimed by counsel:

| ATTORNEYS | Total* Hours | Hourly Rate | Total | Costs | Enhancement |
|---|---|---|---|---|---|
| Walker | 458.9 | $125.00 | $57,362.50 | $1,168.00 | $8,604.37 |
| Quiggle | 371.1 | $ 80.00 | $29,688.00 | $3,395.82 | $2,968.80 |

4. Judge Urbom's order provides in relevant part:

   The plaintiffs are entitled to proceed with this action as a class action, although no determination has yet been made of the identity of the class, and in that connection the plaintiffs should specifically declare whom they seek to represent in view of statute of limitations questions and what they propose to do with respect to the giving of notice to members of the class.

   .    .    .    .    .

   IT THEREFORE HEREBY IS ORDERED:
   1. That within twenty days of the date of this order the plaintiffs by pleading shall specify the description of the class whom they seek to represent and procedures they propose to take in giving notice to members of the class.

5. (a) John W. Walker, Esq., became actively engaged in the private practice of law in 1965, specializing in civil rights litigation. Since that time, Mr. Walker has been actively engaged, if not in fact lead counsel, in approximately 75 major civil rights cases. The appellate courts where he has practiced are the Fifth, Eighth, Ninth, Tenth and Eleventh Courts of Appeal and the United States Supreme Court. Several, if not all of counsel associated in the case in behalf of the plaintiffs, were either former employees, associates or partners of Mr. Walker.

   (b) Perlester A. Hollingsworth, Esq., was admitted to the Arkansas bar in 1969. While the record reflects that Mr. Hollingsworth entered immediately in the practice of law upon being admitted to the bar, he became primarily active in civil rights litigation in June, 1973. Between 1969 and 1973, Mr. Hollingsworth, *inter alia,* was legal and administrative assistant with Small Business Administration. Since 1973, Mr. Hollingsworth has been actively engaged not only in this proceeding, but other prominent civil rights cases in this district.

   (c) Richard Quiggle, Esq., was admitted to the practice of law in 1976, and since that time has been actively and primarily engaged in civil rights litigation in the Fourth, Fifth and Eighth Judicial Circuits. Mr. Quiggle became an active participant in this case in the spring of 1980.

   (d) John M. Bilheimer, Esq., was assigned the principal responsibility for prosecuting this action in 1973, by Mr. Walker, lead counsel, and Mr. Bilheimer continued in this role until August, 1975, when he left the Walker firm. At that time Henry L. Jones and Philip Kaplan assumed responsibility until 1978, when Messrs. Jones and Kaplan disassociated in the case.

   Mr. Bilheimer is a graduate of Harvard Law School and is a former law clerk to Chief Judge G. Thomas Eisele. He has been involved in several civil rights cases since 1973.

   (e) Henry L. Jones, Esq., is a graduate of Michigan Law School and a former law clerk of Chief Judge G. Thomas Eisele. He has been actively involved in several civil rights cases and is currently serving as United States Magistrate.

   (f) Ron Heller, Esq., was admitted to the Arkansas bar in August, 1980. However, Mr. Heller became a law clerk to Mr. Hollingsworth in August, 1978, when he became actively involved in Title VII litigation by assisting in the preparation of briefs, witnesses and trial strategy.

   (g) Janet L. Pulliam, Esq., was admitted to the Arkansas bar on August 1, 1979, and associated in the instant case shortly thereafter, as an associate of Mr. Hollingsworth. However, Ms. Pulliam, prior to graduation from law school in May, 1979, served as law clerk to P.A. Hollingsworth, Esq., working exclusively on Title VII cases.

   (h) Paul Gordon, Esq., received his law degree in May, 1979, and was associated in this litigation on or about December 10, 1981. Prior to his involvement here, Mr. Gordon was a law clerk for one year with the Arkansas Supreme Court, and prior to that time, he was law clerk for the Arkansas Court of Appeals.

| ATTORNEYS | Total * Hours | Hourly Rate | Total | Costs | Enhance-ment |
|---|---|---|---|---|---|
| Hollingsworth:** | | | $42,022.00 | $4,311.12 | $4,200.20 |
| In Court | 143.7 | $100.00 | | | |
| Out of Court | 345.4 | $ 80.00 | | | |
| Bilheimer | 144 | $ 80.00 | $11,520.00 | | $1,152.00 |
| Kaplan | 3 | $ 80.00 | $ 240.00 | | $ 24.00 |
| Jones | 22 | $ 80.00 | $ 1,760.00 | | $ 176.00 |
| Washington | 12 | $ 80.00 | $ 960.00 | | $ 96.00 |
| Gordon | 85.3 | $ 50.00 | $ 4,265.00 | | |
| Pulliam: | | | $ 7,560.00 | | |
| In Court | 43.5 | $ 60.00 | | | |
| Out of Court | 99 | $ 50.00 | | | |
| Heller: | | | $11,190.00 | | |
| As law clerk | 50 | $ 25.00 | | | |
| In Court | 39 | $ 60.00 | | | |
| Out of Court | 152 | $ 50.00 | | | |

* The following hours were deducted from the hours claimed by counsel for time spent on class certification between December 9, 1975, and November, 1981:

| John W. Walker | 29.5 Hours |
|---|---|
| P.A. Hollingsworth | 37.9 Hours |
| Janet Pulliam | 4 Hours |
| Ron Heller | 8 Hours |

** Mr. Hollingsworth's affidavit of October 5, 1982, provides in pertinent part:

My current hourly rate ranges from $70.00 per hour to $125.00 per hour, while other members of my section charge from $40.00 per hours to $85.00 per hour. We also charge for law clerks at the rate of $25.00 per hour to $30.00 per hour. When involved in actual litigation or courtroom work, we generally charge at the high end of the range for charges.

## C. ADJUSTMENT FOR OTHER FACTORS:

The Court is of the view that the final fee award to the following designated attorneys should be enhanced to the extent indicated because of the legal and financial risks incurred in undertaking the case, the quality of representation offered, and the delay involved in this long and extended proceeding:

| John W. Walker | 15% |
|---|---|
| Richard Quiggle | 10% |
| Perlester Hollingsworth | 10% |
| John Bilheimer | 10% |
| Henry L. Jones | 10% |
| Philip Kaplan | 10% |
| Ralph Washington | 10% |

6. This decision does not involve in any way the

The Court is not convinced that an enhancement fee should be afforded Paul Gordon, Ron Heller and Janet Pulliam because these attorneys were associated in this action recently, relatively speaking, and, while there is no doubt that these attorneys contributed to the successful termination of this litigation, it is clear that they assumed a minor role in contrast to other counsel in the assumption risks and the long delay encountered between the initial filing of this lawsuit and the settlement agreement finally terminating this action.

Accordingly, the total fee for counsel is as follows: [6]

1. John W. Walker, $65,966.87, plus costs in the sum of $1,168.00;

$15,000.00 set aside by defendant to pay plain-

2. P.A. Hollingsworth, $46,202.20, plus costs in the sum of $4,311.12;

3. Richard Quiggle, $32,656.80, plus costs in the sum of $3,395.82;

4. John W. Bilheimer, $12,672.00;

5. Henry Jones, $1,936.00;

6. Ralph Washington, $1,056.00;

7. Ron Heller, $11,590.00;

8. Janet Pulliam, $7,560.00;

9. Philip Kaplan, $264.00; and,

10. Paul Gordon, $4,265.00.

Ambrose Robinson, a party-plaintiff, has submitted an affidavit claiming the sum of $1,100.00 as costs for the amount of annual leave that he purportedly lost from his employment for the time spent in preparation for and during the course of the trial. The Court is not persuaded that Mr. Robinson is entitled to claim that as cost since it is plain that he had a duty to assist his counsel in preparation for trial and to appear in Court during trial by virtue of his status as plaintiff. Consequently, this claim is denied. However, Mr. Robinson's claim for long distance telephone calls and funds advanced for depositions and the class action notice has been included in his attorney's claim for costs and will not be allowed here.

### SUMMARY OF COMPUTATION

| | | |
|---|---|---|
| A. | Amount designated as upper limit for fees and costs """"""""""""""""""""""""" | $202,500.00 |
| B. | Attorneys' fees allowed """""" | $183,788.87 |
| C. | Costs allowed """""""""""""""" | $ 8,874.94 |
| D. | Balance remaining"""""""""""" | $ 9,836.19 |

The balance remaining of the upper limit figure in the sum of $9,836.19 shall revert to "The Fund" and be distributed among the plaintiff class.

Unless a request is made by counsel for additional or supplemental relief in this cause within ten (10) days of the date of this order, this action shall be dismissed with prejudice.

IT IS SO ORDERED this 19th day of October, 1982.

tiffs' counsel reasonable fees for time spent

implementing the settlement agreement.